USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _12/20/2021_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JIMMY EKPE,

                Plaintiff,

-against-

THE CITY OF NEW YORK, THE DEPARTMENT FOR THE AGING, CARYN RESNICK, SAL RULLAN, KAMLESH PATEL, JACK RIZZO, JOHN DOE(S) and JANE DOE(S)(names currently unknown) each in his/her official and individual capacities,

                Defendants.

20 Civ. 9143 (AT)

---

MARLENA LATIF,

                Plaintiff,

-against-

THE CITY OF NEW YORK, THE DEPARTMENT FOR THE AGING, CARYN RESNICK, SAL RULLAN, KAMLESH PATEL, JACK RIZZO, JOHN DOE(S) and JANE DOE(S)(names currently unknown) each in his/her official and individual capacities,

                Defendants.

20 Civ. 8248 (AT)

**ORDER**

---

ANALISA TORRES, District Judge:

Plaintiffs Jimmy Ekpe and Marlena Latif (the "Moving Plaintiffs," and with Eddy Toussaint, "Plaintiffs") bring separate employment discrimination actions against the City of New York, the Department for the Aging ("DFTA"), and individual employees of DFTA, alleging claims under, *inter alia*, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et. seq.*, and parallel claims under New York state and city civil rights statutes. *See generally* Ekpe Am. Compl., No. 20 Civ. 9143, ECF No. 38 Latif Am. Compl. No. 20 Civ. 8248, ECF No. 39. On

February 26 and March 10, 2021, this Court accepted Moving Plaintiffs' cases as related to *Toussaint v. City of New York*, No. 19 Civ. 1239 (S.D.N.Y. February 8, 2019), an earlier-filed case brought by Eddy Toussaint, another DFTA employee. *Ekpe*, Dkt. Entry 2/26/2021, No. 20 Civ. 9143; *Latif*, Dkt. Entry 3/10/2021, No. 20 Civ. 8248. On June 23 and 24, 2021, Moving Plaintiffs filed motions seeking to allow them to intervene in each other's cases and in *Toussaint v. City of New York*, or, in the alternative, to consolidate the three cases. Ekpe Mot., No. 20 Civ. 9143, ECF No. 42; Latif Mot., No. 20 Civ. 8248, ECF No. 43. For the following reasons, the motions are DENIED with prejudice.

## BACKGROUND[1]

Latif and Toussaint are current employees of DFTA. Latif Am. Compl. ¶¶ 5, 9. Ekpe was previously employed by DFTA, but resigned in December 2018. Ekpe Am. Compl. ¶ 9. All three Plaintiffs are African-American. Latif Am. Compl. ¶ 26.

Plaintiffs allege that they were subjected to discriminatory comments and treatment by various supervisors at DFTA. For instance, Latif alleges that she was sexually assaulted by a male staff member at DFTA. *Id.* ¶ 28. She reported the incident to the Equal Employment Opportunity Commission ("EEOC"). *Id.* Latif was subsequently reassigned to a new "field" position, and told by her then-supervisor, Frank Guglielmo, that she was reassigned because "no one likes her here." *Id.* On another occasion, when Latif refused to sign papers authorizing Guglielmo's changes to her work hours, Guglielmo "made her stand up for the entire [work] day . . . as punishment." *Id.* ¶ 32. In 2005, Ekpe felt that his supervisor, Robert Treschl, a white man, avoided communicating with him directly, but frequently spoke with a white employee, Jack Rizzo, even though Ekpe had a higher title than Rizzo at the time. Ekpe Am. Compl. ¶ 24. Ekpe believes that Treschl was

---

[1] The following facts are taken from the amended complaints in both actions, and for the purposes of this motion, are assumed to be true.

"grooming" Rizzo to become the next supervisor of their unit, and, in 2007, Rizzo was ultimately promoted to that position. *Id.* On another occasion, Ekpe took time off from work to care for his autistic son. *Id.* ¶ 36. He was then told by Sal Rullan, Deputy Director of the IT Department, that he should not "expect to keep his job when he gets back." *Id.* Moving Plaintiffs both allege that Rullan "has continuously advised the African American staff members [at DFTA] to apply for jobs outside of DFTA when they sought promotions or raises." *Id.* ¶ 22; Latif Am. Compl. ¶ 23.

Moving Plaintiffs allege that DFTA gave them and Toussaint negative performance evaluations, Ekpe Am. Compl. ¶ 25; Latif Am. Compl. ¶ 26, and failed to promote them commensurate with their experience. For instance, in 2005, Latif took a test for the Computer Specialist position, for which she attained a score of 100% and was ranked first on a list of promotable candidates. Latif. Am. Compl. ¶ 24. When she brought her results to Guglielmo, Guglielmo "yelled" at her to "go find a job somewhere else." *Id.* Ekpe alleges he emailed Rullan and other DFTA staff members on multiple occasions asking how he could be promoted, and was "repeatedly told that he should seek employment at another City Agency if he wanted any upward mobility." Ekpe Am. Compl. ¶ 22. In 2007, Ekpe passed a civil service exam for the Computer Associate title, but he was informed by his supervisors at the time that he could not be promoted. *Id.* ¶ 28. Rullan later advised Ekpe that he would not be promoted within DFTA unless he could show a promotion offer from another city agency. *Id.* ¶ 45. Finally, in September 2016, Toussaint took an exam for promotion to Computer Specialist. Latif Am. Compl. ¶ 42. He received the highest score and was "number one on the list" for elevation. *Id.* However, candidates ranked in the second and third positions were promoted over him. *Id.*

On April 12, 2018, Toussaint filed a charge with the EEOC, raising allegations of discrimination on the basis of race and age. *Id.* ¶ 5. Moving Plaintiffs do not allege that they filed separate EEOC charges of discrimination. *See id*; Ekpe Am. Compl. ¶ 5. On February 11, 2019,

3

Toussaint's case was removed from state court and assigned to this Court. *Id.* ¶ 6; Notice of Removal, No. 19 Civ. 1239, ECF No. 1. Toussaint has since filed two amended complaints, No. 19 Civ. 1239, ECF Nos. 39, 79, each of which Defendants moved to dismiss, No. 19 Civ. 1239, ECF Nos. 41, 103. In an order dated September 27, 2021, the Court granted in part and denied in part Defendants' motion to dismiss Toussaint's second amended complaint, and discovery in the matter is now underway. No. 19 Civ. 1239, ECF No. 114.

Latif commenced her action on October 13, 2020. Latif Compl., No. 20 Civ. 8248, ECF No. 2. On June 9, 2021, she filed an amended complaint. Latif Am. Compl. Defendants moved to dismiss the amended complaint on September 30, 2021, and the motion remains pending. Latif Mot. to Dismiss, No. 20 Civ. 8248, ECF No. 61.

Ekpe commenced his action on October 30, 2020. Ekpe Compl., No. 20 Civ. 9143, ECF No. 1. Ekpe filed an amended complaint on June 11, 2021. Ekpe Am. Compl. Defendants' September 30, 2021 motion to dismiss Ekpe's amended complaint remains pending before the Court. No. 20 Civ. 9143, ECF No. 60.

**DISCUSSION**

I. <u>Legal Standard</u>

   A. Intervention

A district court has broad discretion under Federal Rule of Civil Procedure 24 to permit a party to intervene in ongoing litigation when the applicant's claim or defense and the main action have a question of law or fact in common. *See* Fed. R. Civ. P. 24(b)(2); *St. John's Univ., N.Y. v. Bolton*, 450 F. App'x 81, 84 (2d Cir. 2011). In seeking intervention, the proposed intervenor "has the burden of demonstrating its entitlement to intervene." *Seils v. Rochester City Sch. Dist.*, 199 F.R.D. 506, 509 (W.D.N.Y. 2001) (citation omitted). To do so, an intervenor must "(1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired

by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action." *Floyd v. City of New York*, 770 F.3d 1051, 1057 (2d Cir. 2014) (per curiam) (citation omitted).  The Second Circuit has made clear that "a failure to satisfy *any one* of these four requirements is a sufficient ground to deny the application." *Id.* (emphasis in original) (alteration, quotation marks, and citation omitted).  The Court must also "consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

        B.  Consolidation

Where actions before a court "involve a common question of law or fact, the court may . . . consolidate the actions . . . to avoid unnecessary cost or delay." Fed. R. Civ. P. 42.  As with a motion to intervene, the Court "has broad discretion to determine whether consolidation is appropriate." *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284–85 (2d Cir. 1990).  Although the Court may consolidate cases *sua sponte*, when a party moves for consolidation, the moving party bears the burden of demonstrating that the actions should be consolidated. *Transeastern Shipping Corp. v. India Supply Mission*, 53 F.R.D. 204, 206 (S.D.N.Y. 1971).

Consolidation is appropriate only where it serves the interest of judicial economy. *Jacobs v. Castillo*, 612 F. Supp. 2d 369, 373 (S.D.N.Y. 2009). That is, the "primary purpose" of consolidation is "savings of expense and gains of efficiency." *Romeo v. Suffolk Ready Mix LLC*, No. 09 Civ. 2253, 2010 WL 3925260, at *2 (E.D.N.Y. Sept. 23, 2010).  The Court must therefore weigh the benefits of consolidation against any confusion, delay, or prejudice that might result from consolidation.  *See Jamroz v. Blum*, 509 F. Supp. 953, 956 (N.D.N.Y. 1981).  For instance, courts in this Circuit have found that, where cases are in different stages of discovery, consolidation does not achieve the aims of judicial efficiency even if the cases share some factual overlap. *Romeo*, 2010 WL 3925260, at *2.

II. <u>Intervention</u>

The Court does not find that Moving Plaintiffs' motions for intervention are timely. The Second Circuit has been clear that "[a]mong the most important factors in a timeliness decision is the length of time the applicant knew or should have known of his interest before making the motion." *Catanzano by Catanzano v. Wing*, 103 F.3d 223, 232 (2d Cir. 1996) (quotation marks omitted). Moving Plaintiffs concede that they waited two years before seeking intervention in the *Toussaint* case. Ekpe Mem. at 10, No. 20 Civ. 9143, ECF No. 44,; Latif Mem. at 11, No. 20 Civ. 8248, ECF No. 45. Moreover, Moving Plaintiffs commenced their actions in October 2020, but waited until June 2021 to file motions to intervene in each other's actions. *See generally,* Ekpe Compl.; Latif Mot.; Latif Compl.; Ekpe Mot. All three Plaintiffs are represented by the same counsel in their separate actions, and all three cases are public. There is no basis on which to conclude that Moving Plaintiffs lacked actual or constructive knowledge of each other's suits or Toussaint's suit. *See MasterCard Int'l v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 390 (2d Cir. 2006).

Moving Plaintiffs offer no compelling justification for their delay, *see* Ekpe Mem. at 10; Latif Mem. at 11, and other courts have found shorter delays untimely. *See, e.g. Mastercard*, 471 F.3d at 390-91 (six month delay untimely); *Butler Fitzgerald, & Potter v. Sequa Corp.*, 250 F.3d 171, 182 (2d Cir. 2001) (year's delay untimely). This alone provides a basis for denial of Moving Plaintiffs' motions.

Second, even assuming that Moving Plaintiffs have an interest in each other's actions and in Toussaint's action, there is no indication that their interests are not protected adequately by the other Plaintiffs, given the alignment in their interests. Although the burden to demonstrate inadequacy of representation is generally "minimal," the Second Circuit requires "a more rigorous showing of inadequacy in cases where the putative intervenor and a named party have the same

6

ultimate objective." *Butler, Fitzgerald, & Potter v. Sequa Corp.*, 250 F.3d 171, 179 (2d Cir. 2001) (collecting cases). Where, as here, there is a commonality of interest between the putative intervenor and the existing party in an action, the intervenor "must rebut the presumption of adequate representation by the party already in the action by showing "evidence of collusion, adversity of interest, nonfeasance, or incompetence." *Id*. at 179–80. Here, Plaintiffs share the same interests—including establishing Defendants' discriminatory animus and demonstrating that certain employment-related actions, including a failure to promote Plaintiffs, were taken by Defendants as a result of that animus. Moving Plaintiffs have not advanced evidence of collusion or incompetence by any party—and again, as all three Plaintiffs are represented by the same counsel, such a scenario is unlikely.

The Court finds, moreover, that permissive intervention would result in prejudice to the Defendants. Although the three cases share the same broad outline—employment discrimination claims by three DFTA employees—there are considerable distinctions as to the factual and legal issues each case raises. For instance, Latif raises legal claims under the Equal Pay Act, Latif Am. Compl. ¶¶ 3, 184–88, that are not raised by Ekpe or Toussaint, and makes factual allegations as to gender discrimination and sexual assault that neither Ekpe nor Toussaint share, *id*. ¶¶ 1, 28. Moving Plaintiffs also attribute derogatory comments and discriminatory behavior to different superiors at DFTA. *Compare* Latif Am. Compl. ¶¶ 28, 32 (describing derogatory remarks and physical abuse by Guglielmo) *with* Ekpe Am. Compl. ¶¶ 22, 24, 45 (detailing verbal abuse and disparate treatment by Rullan and Treschl). And, though all three Plaintiffs raise claims as to DFTA's failure to promote them, their specific factual allegations concern the outcomes of different exams, for different promotional opportunities, in different time periods. *Compare* Latif Am. Compl. ¶ 24 (describing outcome of Latif's failure to be promoted in a 2005 computer specialist promotion process) *with* Ekpe Am. Compl. ¶ 41 (describing Toussaint's failure to be

7

promoted after a 2016 computer specialist exam) *with id.* ¶ 28 (discussing Ekpe's failure to be promoted to "computer associate" following a 2007 exam).

Moreover, because Toussaint filed his action several months before Moving Plaintiffs, the three litigations are at different procedural stages. The *Toussaint* parties have completed discovery and engaged in extensive motion practice. By contrast, Defendants have only recently moved to dismiss Moving Plaintiffs' complaints, and discovery has not yet commenced. Given the three actions' distinct factual allegations and legal claims, and their divergent procedural postures, permitting intervention of Moving Plaintiffs in *Toussaint* at this late stage—or allowing Toussaint to intervene in *Latif* or *Ekpe*—would cause undue delay and prejudice to Defendants by requiring them to re-open discovery in *Toussaint*, or to potentially re-litigate certain claims in *Latif* and *Ekpe*. *See Trustees of National Retirement Fund v. Fireservice Mgmt., LLC*, 384 F. Supp. 3d 412, 420-21 (S.D.N.Y. 2019) (noting courts may properly deny motions to intervene for prejudice to the existing parties where granting would require further discovery). On the other hand, although Moving Plaintiffs argue that they will be prejudiced by having to "litigate three separate cases," *see e.g.* Latif Mem. at 11, they again provide no explanation for why they chose, at the outset, to litigate these cases separately, despite being represented by the same attorney, or why they waited for months before seeking permission to intervene. The Court cannot conclude that Moving Plaintiffs will experience prejudice from their own strategic decisions in prosecuting these actions separately.

Accordingly, Moving Plaintiffs have failed to meet their burden of demonstrating their entitlement to intervene, and their motions are DENIED.

  III.  Consolidation

Moving Plaintiffs similarly have not met their burden of demonstrating that consolidation is warranted. They offer only conclusory statements that consolidation would be "more efficient"

and "[a]void[] unnecessary paperwork." *E.g.* Latif Mem. at 13. Indeed, Moving Plaintiffs explicitly concede that granting consolidation "would delay trial in this matter," given the three cases' divergent procedural postures as to the state of discovery and motion practice. *E.g. id.*; Ekpe Mem. at 13. Consolidating *Latif* and *Ekpe* with *Toussaint* and requiring the filing of a consolidated complaint at this late stage—well after the Court has dismissed multiple claims in Toussaint's second amended complaint and when both Moving Plaintiffs' amended complaints are the subject of pending motions to dismiss—would not result in gains of efficiency or savings of expense. Similarly, as discussed above, although the cases may share the same broad contours, they raise distinct factual assertions and legal claims. The presence of these assertions and claims militate against consolidation because they would prevent the facilitation of more efficient or cost-effective discovery. For instance, Latif would likely need to conduct significant discovery to support her allegations of sexual harassment, gender discrimination, and discriminatory behavior by her supervisor, Guglielmo—none of which would further develop the factual contours of Ekpe's and Toussaint's claims relating to race or age discrimination based on treatment from other DFTA employees. The Court concludes that consolidation of the three actions is not justified, and accordingly, Moving Plaintiffs' motions to consolidate are DENIED.

## CONCLUSION

For the foregoing reasons, Moving Plaintiffs' motions seeking permissive intervention and, in the alternative, consolidation of the three actions are DENIED with prejudice. The Clerk of Court is directed to terminate the motions pending at No. 20 Civ. 9143, ECF No. 42, and No. 20 Civ. 8248, ECF No. 43.

SO ORDERED.

Dated: December 20, 2021
New York, New York

_____
ANALISA TORRES
United States District Judge