```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
JIMMY EKPE,

                                    Plaintiff,

            -against-

THE CITY OF NEW YORK, THE
DEPARTMENT FOR THE AGING, CARYN
RESNICK, SAL RULLAN, KAMLESH
PATEL, JACK RIZZO, JOHN DOE(S) and
JANE DOE(S) (names currently unknown)
each in his/her official and individual
capacities,

                                    Defendants.
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _04/12/2024_

20 Civ. 9143 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Plaintiff, Jimmy Ekpe, brings this employment discrimination action against Defendants, the City of New York (the "City"), the New York City Department for the Aging ("DFTA"), Caryn Resnick, Sal Rullan, Kamlesh Patel, and Jack Rizzo, and John and Jane Does. In the second amended complaint, he alleges disparate treatment, disparate impact, hostile work environment, conspiracy, constructive discharge, and other claims arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*; 42 U.S.C. §§ 1981, 1983, 1985, 1986; the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290, *et seq.*; and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101, *et seq.* Second Am. Compl. ("SAC") ¶¶ 104–97, ECF No. 113. Defendants move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Defs. Mot., ECF No. 119; *see* Defs. Mem., ECF No. 121. For the reasons stated below, the motion is GRANTED.

# BACKGROUND[1]

Ekpe, an African-American man, was an employee in the information technology ("IT") help desk unit at DFTA from 2003 to 2018. SAC ¶¶ 9, 21.

Promotions at DFTA are governed by New York Civil Service Law § 61, which requires agencies to fill vacancies by selecting one of the three eligible candidates who score highest on the relevant examination offered by the agency. *Id.* ¶¶ 81–85; N.Y. Civ. Serv. Law §§ 50, 61. The agency can consider seniority, previous training and experience, and performance evaluations when making its final decision. N.Y. Civ. Serv. Law § 52; SAC ¶ 82. The performance evaluations at DFTA have objective criteria, but allow supervisors the discretion to include or omit subjective factors. SAC ¶ 63.

Ekpe alleges that Sal Rullan, the deputy director of the IT unit at DFTA, passed him over for promotion along with two African-American co-workers, Eddy Toussaint and Marlena Latif, who were qualified for the positions they sought based on their exam scores. *Id.* ¶¶ 16, 21–25, 36, 40, 41, 46, 48, 67–72. Those positions were either left open or eventually filled by non-African-American employees. *Id*. In addition, "on several occasions" throughout Ekpe's employment at DFTA, he, Toussaint, and Latif were not permitted to participate in trainings that would allow them to gain skills required for promotions, although non-African-American employees that Rullan planned to promote were permitted and encouraged to do so. *Id.* ¶¶ 20, 27, 46, 67, 72. Ekpe alleges that he, Toussaint, and Latif were also the only employees to receive negative performance evaluations, despite their competence, experience, and satisfactory performance, *id.* ¶¶ 28, 51, and that when he, Toussaint, or Latif sought promotions, they were

---

[1] The following facts are taken from the SAC and "are presumed to be true for purposes of considering a motion to dismiss for failure to state a claim." *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 398 (2d Cir. 2015).

repeatedly told to find employment at another City agency. *Id*. ¶¶ 25, 43.

Ekpe first resigned by letter dated December 15, 2017, which DFTA received on December 18, 2017. *Id*. ¶ 9;[2] *see* ECF No. 120-1.[3] He subsequently rescinded his resignation, ECF No. 120-2, and took an unpaid personal leave of absence starting on December 15, 2017, and ending on September 4, 2018, ECF No. 120-3. Ekpe did not return to DFTA following his leave of absence, instead resigning on September 3, 2018. ECF No. 120-5.

On April 12, 2018, Toussaint filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that he was denied promotions and career-advancing trainings in violation of Title VII and the ADEA. Toussaint EEOC Charge, ECF No. 134-1. Ekpe, who has not filed an EEOC charge, initiated this action on October 30, 2020, and subsequently amended his complaint twice. ECF Nos. 1, 37, 65.

Defendants move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the SAC as partly time-barred, and for failure to (1) exhaust administrative remedies, (2) plead personal involvement of certain defendants, and (3) state claims upon which relief can be granted. Defs. Mem. at 2.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient factual allegations in the complaint that, accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (quotation marks omitted)). "A claim has facial plausibility when the plaintiff

---

[2] The cited paragraph states that Ekpe resigned on December 18, 2018. Based on the parties' papers and other parts of the complaint, the Court believes this is a typographical error and should read "December 18, 2017."

[3] A "complaint is deemed to include any . . . documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (citation omitted). The Court finds that the documents pertaining to Ekpe's resignation and leave of absence are incorporated by reference in the SAC, and the Court may consider them in deciding Defendants' motion.

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

A plaintiff is not required to provide "detailed factual allegations" in the complaint, but must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Ultimately, the facts pleaded in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* A court must "accept[] the factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).

## DISCUSSION

I. Abandoned and Withdrawn Claims

As a preliminary matter, Defendants contend that in his response to their pre-motion letter, Ekpe "concede[s] that he doesn't have viable § 1981 claims, [or] §§ 1983/1985/1986 conspiracy claims." Defs. Mem. at 2 n.1 (citing ECF No. 117 at 4 (Ekpe's pre-motion letter stating that there is "no separate private right of action under § 1981" and that Ekpe "cannot plausibly plead a conspiracy pursuant to federal law")). Ekpe raises his §§ 1981 and 1983 claims in his opposition papers. *See, e.g.*, Pl. Opp. at 15, ECF No. 124. But, he does not address his §§ 1985 and 1986 conspiracy claims. *See id.* "[D]istrict courts frequently deem claims abandoned when counseled plaintiffs fail to provide arguments in opposition at the motion to dismiss stage." *Colbert v. Rio Tinto PLC*, 824 F. App'x 5, 11 (2d Cir. 2020). Although the Second Circuit has indicated that courts should depart from this practice in cases of manifest injustice, *see id.*, this is not such a case. Ekpe also concedes that under the New York City charter, DFTA "is not suable," Pl. Opp. at 9, and withdraws his disparate impact claim, *id.* at 15–16.

4

Accordingly, Defendants' motion to dismiss Ekpe's Title VII disparate impact claim in Count One, his §§ 1985 and 1986 claims in Counts Seven and Fourteen, and his claims against Defendant DFTA is GRANTED.

II.     Exhaustion

"Before an individual may bring a Title VII [or ADEA] suit in federal court, the claims forming the basis of such a suit must first be presented in a complaint to the EEOC or the equivalent state agency." *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 69 (2d Cir. 2006) (citing 42 U.S.C. § 2000e–5); *Holowecki v. Fed. Exp. Corp.*, 440 F.3d 558, 567 (2d Cir. 2006) (describing ADEA exhaustion requirement). A plaintiff "may raise in a district court complaint only those claims that either were included in or are reasonably related to the allegations contained in [his] EEOC charge." *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 83 (2d Cir. 2001) (quotation marks and citations omitted).

Filing an EEOC charge, however, is not a "jurisdictional prerequisite to suit." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982). Pursuant to the single-filing rule, a plaintiff may "'piggyback' onto the timely filed charge of another plaintiff to satisfy the exhaustion requirement." *Rusis v. Int'l Bus. Machines Corp.*, 529 F. Supp. 3d 178, 199 (S.D.N.Y. 2021) (describing "[t]he single-filing rule, commonly referred to as the piggybacking doctrine"). To utilize the single-filing rule, a plaintiff's claims must be reasonably related or "arise out of similar discriminatory treatment in the same time frame" to the filed charge in order to afford "the employer [] adequate notice and an opportunity for conciliation." *Snell v. Suffolk County*, 782 F.2d 1094, 1100 (2d Cir. 1986) (cleaned up); *Burgis v. N.Y.C. Dep't of Sanitation*, 798 F.3d 63, 71 n.9 (2d Cir. 2015) ("To be reasonably related, a claim must be one that reasonably would be expected to fall within the scope of the conduct complained of in the administrative charge."). "Courts in the Second Circuit have generally held that claims alleging

discrimination based upon a protected classification which are different than the protected classification asserted in administrative filings are not reasonably related." *Gronowicz v. Coll. of Staten Island*, 359 F. Supp. 2d 243, 248 (N.D.N.Y. 2005); *see, e.g.*, *Hawkins v. Wegmans Food Mkt., Inc.*, 224 F. App'x 104, 105 (2d Cir. 2007) (summary order) (finding age and race discrimination allegations not "reasonably related" to gender and disability claims in EEOC charge).

Defendants argue that the SAC should be dismissed based on Ekpe's failure to first file a charge with the EEOC or the equivalent state agency. Defs. Mem. at 7. The Court disagrees. Ekpe can "piggyback" on Toussaint's April 2018 EEOC charge, which was filed before Ekpe's complaint. *See* Toussaint EEOC Charge.

Defendants next argue that Ekpe's claims must be dismissed because they do not arise out of the same discriminatory treatment as Toussaint's. Defs. Reply at 6–7, ECF No. 128. The Court again disagrees. In his charge, Toussaint states that he is a "Black 57-year-old male" and alleges that his employer's practices violated Title VII and the ADEA. Toussaint EEOC Charge. In this action, Ekpe makes similar allegations, claiming discrimination based on race and age. *See generally* SAC. Further, Ekpe and Toussaint were employed by the same DFTA unit for approximately fifteen years, and Ekpe alleges that many of the discriminatory actions were directed toward both of them. *See, e.g.*, SAC ¶¶ 28, 42, 72; *Tolliver v. Xerox Corp.*, 918 F.2d 1052, 1058 (2d Cir. 1990) ("Where the grievances arise in a work unit of modest size . . . we agree that mere similarity of the grievances within the same general time frame suffices to permit the 'single filing rule.'"). The Court, therefore, finds that Ekpe's claims are reasonably related to those articulated in Toussaint's EEOC charge and he may invoke the single-filing rule to satisfy the exhaustion requirement.

Accordingly, Defendants' motion to dismiss the SAC on the ground that Ekpe failed to exhaust his administrative remedies is DENIED.

III.   Title VII and ADEA Disparate Treatment Claims

To claim a violation of Title VII or the ADEA, a plaintiff must file administrative charges with the EEOC within 300 days of the alleged discriminatory acts. *Flaherty v. Metromail Corp.*, 235 F.3d 133, 136 n.1 (2d Cir. 2000) (citing 42 U.S.C. § 2000e-5(e)(1)); *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 236 (2d Cir. 2007) (citing 29 U.S.C. § 626(d)).  "A claim of employment discrimination accrues for statute of limitations purposes on the date the employee learns of the employer's discriminatory conduct." *Dickens v. Hudson Sheraton Corp., LLC*, 167 F. Supp. 3d 499, 514 (S.D.N.Y. 2016), *aff'd*, 689 F. App'x 670 (2d Cir. 2017).

Where a plaintiff has filed his own EEOC charge, the single-filing rule does not alter the statutes of limitations on his claims. *Holowecki*, 440 F.3d at 564; *In re IBM Arb. Agreement Litig.*, 76 F.4th 74, 83–84 (2d Cir. 2023).  However, where a plaintiff does not file a charge and relies on the single-filing rule, courts in this Circuit evaluate timeliness based on the date the relied-upon EEOC charge was filed. *Rodriguez v. Int'l Bus. Machines Corp.*, No. 21 Civ. 9928, 2024 WL 1313712, at *3 (S.D.N.Y. Mar. 27, 2024) ("[A] plaintiff seeking to piggyback onto the administrative charge of another would be subject to the same statute of limitations as those persons similarly situated upon whose charge he relies." (quoting *Bowers v. Xerox Corp.*, Nos. 94 Civ. 6093 & 6261, 1995 WL 880773, at *4 (W.D.N.Y. May 5, 1995)); *Rusis*, 529 F. Supp. 3d at 223; *Ahmad v. Int'l Bus. Machines Corp.*, No. 10 Civ. 310, 2012 WL 1940666, at *4 (D. Vt. May 29, 2012), *aff'd*, 553 F. App'x 58 (2d Cir. 2014).  Therefore, discriminatory acts that Ekpe alleges occurred more than 300 days before Toussaint filed his EEOC Charge are time-barred.

Further, the continuing-violation doctrine is inapplicable to Ekpe's disparate treatment claims.  Under Title VII, "discrete acts" such as failure to promote are "not actionable if time

7

barred, even when they are related to acts alleged in timely filed charges." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002); *see also Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 157 (2d Cir. 2012) ("*Morgan* established that an employer's failure to promote is by its very nature a discrete act."). Instead, "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." *Morgan*, 536 U.S. at 113. Each time DFTA denied Ekpe a promotion over the course of his career constitutes a discrete act, and every such act that falls outside of the 300-day limitations period is not actionable under Title VII and the ADEA. Similarly, failure to train or denial of training requests and negative performance evaluations are considered "discrete acts" to which *Morgan* applies. *Anderson v. N.Y.C. Dep't of Corr.*, No. 12 Civ. 4064, 2013 WL 5229790, at *3 (S.D.N.Y. Sept. 17, 2013) ("[T]he continuing violation exception does not apply because each denial of . . . training . . . [is] considered [an] individual 'discrete act[]' against [plaintiff]."); *Siddiqi v. N.Y.C. Health & Hosps. Corp.*, 572 F. Supp. 2d 353, 366 (S.D.N.Y. 2008) (recognizing that "[e]ach negative performance evaluation is a discrete act").

Accordingly, under Title VII and the ADEA, allegations regarding disparate treatment occurring before June 16, 2017—300 days before Toussaint filed his EEOC charge on April 12, 2018—are time-barred.[4] Ekpe has alleged three distinct adverse employment actions: failure to promote, denial of career-advancing training opportunities, and a negative performance evaluation. Specifically, he alleges that in 2006, he received a negative performance evaluation as a result of racially discriminatory animus. SAC ¶ 28. He also alleges that in 2009, Rullan "tried to stop" him from being promoted despite Ekpe's having taken the relevant civil service

---

[4] Ekpe argues that New York state executive orders tolling statutes of limitations during the COVID-19 pandemic apply to his federal claims. Pl. Opp. at 4. Not so. Where, as here, a federal statute contains the statute of limitations, it is unaffected by state tolling rules. *Verne v. N.Y.C. Dep't of Educ.*, No. 21 Civ. 5427, 2022 WL 4626533, at *6 (S.D.N.Y. Sept. 30, 2022) (collecting cases).

8

exam and been the only employee to pass the exam.[5] *Id.* ¶ 36. Finally, he alleges that he was denied career-advancing training opportunities. *Id.* ¶ 72. Although each of these discrete acts constitute an adverse action, they do not fall within the statute of limitations. Because Ekpe does not allege adverse actions within 300 days of the filing of Toussaint's EEOC charge, Defendants' motion to dismiss his Title VII and ADEA claims is GRANTED.[6]

    IV.    <u>Title VII Hostile Work Environment Claim</u>

Ekpe's Title VII hostile work environment claim is not time-barred even if the underlying acts fall outside the statute of limitations. "[A] charge alleging a hostile work environment claim . . . will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." *Davis-Garett v. Urb. Outfitters, Inc.*, 921 F.3d 30, 42 (2d Cir. 2019) (emphasis omitted) (quoting *Morgan*, 536 U.S. at 122).

To adequately plead a hostile work environment claim under federal law, a plaintiff must allege that his workplace was "permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quotation marks and citations omitted); *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 227 (2d Cir. 2004); *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 578 (S.D.N.Y. 2011). A plaintiff must also plead facts that tend to show that the complained-of conduct "(1) is objectively severe

---

[5] Ekpe was ultimately promoted in 2010 after the IT unit was transferred to the City's Human Resources Administration, SAC ¶ 36, but a delay in promotion still constitutes an adverse action where a plaintiff, as Ekpe does here, alleges "lost wages, benefits, and other types of injuries." *Toussaint v. City of New York*, No. 19 Civ. 1239, 2021 WL 4429316, at *7 (S.D.N.Y. Sept. 27, 2021) (citation omitted).

[6] Defendants also argue that the case should be dismissed because Ekpe failed to file his suit within ninety days of Toussaint receiving his right-to-sue notice, another requirement of Title VII and the ADEA. Defs. Reply at 6–7, ECF No. 128. The Court will not address this issue as the claims are dismissed on other grounds.

or pervasive—that is, . . . creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [race]." *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (quotation marks and citation omitted).

Ekpe's allegations do not rise to this level. He alleges no racially discriminatory statements, intimidation, or ridicule directed at him, and only one plausibly discriminatory statement alleged by Latif. SAC ¶ 38; *Mendez-Nouel v. Gucci Am., Inc.*, No. 10 Civ. 3388, 2012 WL 5451189, at *9 (S.D.N.Y. Nov. 8, 2012) ("The plaintiff must show that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of [his] employment were thereby altered."); *Rettino v. N.Y.C. Dep't of Educ.*, No. 19 Civ. 5326, 2021 WL 2987113, at *6 (S.D.N.Y. July 15, 2021) (denying hostile work environment claim that was limited to a failure to hire). Further, Ekpe's allegations regarding the failure to promote, failure to train, and the negative performance evaluation do not rise to an objectively severe and pervasive level. *Reppert v. N.Y. State Dep't of State*, No. 19 Civ. 1518, 2021 WL 3165210, at *9 (N.D.N.Y. July 26, 2021) (denying a hostile work environment claim where plaintiff was not permitted to attend a professional event, among other things); *see also Toussaint*, 2021 WL 4429316, at *10.

Accordingly, Defendants' motion to dismiss Ekpe's Title VII hostile work environment claims is GRANTED.

V. <u>Municipal Liability</u>

In order to sustain a § 1983 or § 1981 claim against a city, a plaintiff must establish municipal liability. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694–95 (1978) (§ 1983); *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733–36 (1989) (§ 1981); *Duplan v. City of New York*, 888 F.3d 612, 619 (2d Cir. 2018) ("[T]he express cause of action for damages created by § 1983

10

constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units." (quoting *Jett*, 491 U.S. at 733)). Under *Monell*, "a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell*, 436 U.S. at 691 (emphasis omitted). Rather, the government as an entity is only liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id.* at 694.

"To allege the existence of an affirmative municipal policy, a plaintiff must make factual allegations that support a plausible inference that the constitutional violation took place pursuant either to a formal course of action officially promulgated by the municipality's governing authority or the act of a person with policymaking authority for the municipality." *Missel v. Cnty. of Monroe*, 351 F. App'x 543, 545 (2d Cir. 2009). Allegations that defendants acted pursuant to a "policy," without any facts suggesting the policy's existence, are plainly insufficient. *Id*.

Here, Ekpe has not established an official policy. SAC ¶¶ 84–85. He nearly alleges generally that DFTA maintains a "secretive process that lacks standards and allows management . . . to promote [] employees who are not African-American" and a de facto policy of sending only non-African American employees to career-advancing trainings. SAC ¶ 107. Such allegations, without more to demonstrate the existence of a formal government policy, are insufficient. *Missel*, 351 F. App'x at 545.

Nor has he alleged that Rullan is an authorized policymaker. Whether the official in question is a final policymaker "is a legal issue to be determined on the basis of state law," *Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1349 (2d Cir. 1994). A plaintiff bears the burden of establishing an official's status as a final policymaker with allegations going to the

official's scope of employment and his role within the municipal or corporate organization. *See Jeffes v. Barnes*, 208 F.3d 49, 57–58 (2d Cir. 2000).

Ekpe alleges that Rullan "was the Deputy Director of the IT Unit at [DFTA] and was [] responsible for making the decision on who would be promoted or hired from the competitive exams for Computer Specialist (Software) position." SAC ¶ 16. He also alleges that Rullan "has full control over who he could hire because . . . his superior would typically go along with whoever he suggested." *Id.* ¶ 74. However, decisionmaking authority does not necessarily equate to policymaking authority. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481–482 (1986); *Hurdle v. Bd. of Educ. of City of N.Y.*, 113 F. App'x 423, 426–27 (2d Cir. 2004) ("The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion. The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable." (citation omitted)). Although Ekpe has alleged a number of DFTA practices, he has not alleged that Rullan had the formal policymaking authority to "adopt rules for the conduct of government." *Id.* at 427 (quoting *Auriemma v. Rice*, 957 F.2d 397, 401 (7th Cir. 1992)). Further, Ekpe's allegation that Rullan's supervisor would "typically" go along with his suggestions, SAC ¶ 74, indicates that Rullan's decisionmaking was not binding.

Accordingly, Defendants' motion to dismiss Ekpe's §§ 1981 and 1983 municipal liability claims is GRANTED.

VI. State and Local Law Claims

Finally, Ekpe brings claims under the NYSHRL and the NYCHRL. SAC ¶¶ 110–19, 132–36, 142–68, 185–97. Having granted Defendants' motion to dismiss Ekpe's federal claims, the Court declines to exercise supplemental jurisdiction over his state-law claims. *See* 28 U.S.C.

§ 1367(c)(3); *Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998) ("[W]here the federal claims are dismissed before trial, the state claims should be dismissed as well.").

Accordingly, those claims are DISMISSED without prejudice to renewal in state court.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED as to Ekpe's federal claims, and Ekpe's state and local claims are DISMISSED without prejudice to renewal in state court. The Clerk of Court is directed to enter judgment for Defendants consistent with this order and close the case.

SO ORDERED.

Dated: April 12, 2024
New York, New York

_____
ANALISA TORRES
United States District Judge